IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

REMA DAWSON-MURDOCK,

Plaintiff,

v.                                          Civil Action No. 3:18-cv-58

NATIONAL COUNSELING GROUP, INC., et al.,

Defendants.

## OPINION

This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"). After her husband passed away, the plaintiff, Rema Dawson-Murdock, sought benefits under his group life insurance policy. Her husband's employer, National Counseling Group, Inc. ("NCG"), told Dawson-Murdock that its insurance provider, Unum Life Insurance Company of America ("Unum"), denied her claim. Even so, NCG told her that it would pay the claim and work with Unum on the denial. NCG got nowhere with Unum, and ultimately decided not to pay Dawson-Murdock's claim.

Dawson-Murdock sued NCG and the NCG Plan (the "Plan"),[1] alleging two counts under ERISA and two common law counts. Dawson-Murdock cannot establish that NCG acted as a Plan fiduciary, so the ERISA counts fail, and because ERISA preempts her state law claims, the Court will also dismiss the negligence and breach of contract counts.

---

[1] The complaint does not contain substantive allegations against the Plan. The Court views the Plan as a nominal defendant, with no actual existence apart from NCG, the employer that administered it. *See Wiseman v. First-Citizens Bank & Trust Co.*, No. 1:02-cv-41, 2002 WL 1186458, at *3 (W.D.N.C. May 31, 2002).

## I. FACTS[2]

The plaintiff's husband, Wayne Murdock, worked full-time for NCG and elected employer-provided group life insurance coverage of $150,000. On March 21, 2016, Murdock switched to part-time work, and did not return to full-time before he died on August 30, 2016. After her husband's death, Dawson-Murdock submitted a benefits claim to Unum. On October 24, 2016, NCG's vice president of human resources, Christopher Baham, notified Dawson-Murdock that Unum denied her claim. Nevertheless, Baham told her that NCG would pay the claim amount to her directly while the company worked through the denial with Unum. Baham also stated that she would not need to deal further with Unum. Dawson-Murdock received Unum's denial letter a few days later, stating that her husband was not eligible for coverage when he died because he had switched to part-time work without converting to portable coverage. She did not appeal Unum's denial due to Baham's representations. She communicated with Baham regarding the claim for several months. Baham repeatedly told her that NCG was working on the payment, but eventually notified her in February, 2017 that NCG would not pay.

---

[2] In addressing a motion to dismiss, the Court accepts the facts alleged in the complaint as true. A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## II. DISCUSSION

After NCG told Dawson-Murdock that it would not pay her insurance claim, she filed this suit for ERISA breach of fiduciary duty[3] (I) to a Plan participant (her husband) and (II) to a Plan beneficiary (herself), as well as for (III) negligence and detrimental reliance, and (IV) breach of contract. The defendants have moved to dismiss.

### *A. Breach of Fiduciary Duty Claims*

Before the Court can consider if a breach of fiduciary duty occurred, it must first decide if NCG met the statutory definition of a fiduciary. *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 60–61 (4th Cir. 1992). On a motion to dismiss, "the threshold question is whether the plaintiff sufficiently alleges that [the defendant] was a fiduciary" under ERISA. *Paasch v. Nat'l Rural Elec. Coop. Ass'n*, 177 F. Supp. 3d 930, 936 (E.D. Va. 2016). To answer this question about an employer, the Court must look at "the sufficiency of allegations in the complaint with regard to the fiduciary's status, and specifically, whether [the complaint alleges] that the individual acted with functional control, discretion, and authority over the employee benefit plan." *Searls v. Sandia Corp.*, 50 F. Supp. 3d 737, 747 (E.D. Va. 2014).

By definition:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

---

[3] The complaint lists ERISA § 502 as the basis for the plaintiff's claims, but it does not include a specific subsection. (Dk. No. 1, at 2.) Dawson-Murdock clarifies in her response to the motion to dismiss that she seeks equitable relief under ERISA § 502(a)(3). (Dk. No. 10, at 1.)

3

29 U.S.C. § 1002(21)(A). A fiduciary under ERISA is not an all or nothing concept, as indicated by the words, "to the extent." *Coleman*, 969 F.2d at 61. Courts must consider whether the defendant acted as a fiduciary for the "particular activity at issue." *Id.* This does not mean examining what a defendant <u>should</u> have done, but instead looking at whether the defendant exercised discretionary authority over plan management and administration. *Estate of Weeks v. Advance Stores Co. Inc.*, 99 F. App'x 470, 476–77 (4th Cir. 2004). The Department of Labor ("DOL") issued guidance on ERISA fiduciary duties, explaining that "a person who performs purely ministerial functions" does not qualify as a fiduciary. 29 C.F.R. § 2509.75-8 (D-2).

The statutory definition limits ERISA fiduciary conduct to a narrow scope of activities. For instance, one employer accepted premium payments from an employee after his eligibility for life insurance benefits ceased, and failed to notify that employee that he no longer qualified. *Moon v. BWX Techs., Inc.*, 577 F. App'x 224, 231 (4th Cir. 2014). These did not amount to fiduciary activities; rather, the DOL guidance describes "advising participants of their rights and options under the plan" and collecting contributions as administrative functions. *Id.* (citing 29 C.F.R. § 2509.75-8(D-2)). Similarly, a human resources ("HR") manager did not act as a fiduciary when she misstated information about insurance coverage. *Weeks*, 99 F. App'x at 476. Specifically, after Mr. Weeks ended his employment and became ill, the HR manager informed his wife, the beneficiary, that Mr. Weeks' insurance had terminated, but she did not tell Mrs. Weeks that her husband could apply for continued coverage. *Id.* at 473. Although the HR manager may have exercised discretion in certain parts of her job, she did not have discretionary authority over the health and life insurance plans when speaking with Mrs. Weeks. *Id.* at 476–77.

Dawson-Murdock claims that NCG failed to notify her husband that his eligibility for the group life insurance plan changed after he switched to part-time work, even though he continued to pay premiums. This conduct does not fall within the scope of fiduciary activity. Collecting premium payments and failing to notify Murdock of his ineligibility qualify as administrative, not fiduciary, functions. *See Moon*, 577 F. App'x at 231. Likewise, Braham telling Dawson-Murdock that NCG would take care of the claim and she would no longer need to communicate with Unum does not meet the narrow definition of a fiduciary activity, even if he misstated this information. *See Weeks*, 99 F. App'x at 476–77. The complaint thus fails to establish that NCG's alleged conduct entailed discretionary control over the Plan.

The fiduciary question focuses on the conduct at issue rather than the employer's title. *Coleman*, 969 F.2d at 61 (looking "beyond the formalities" to see if the employer "in fact exercised authority"). "Under ERISA, an employer that establishes or maintains an employee benefit plan is 'a sponsor.'" *Healthtek Sols., Inc. v. Fortis Benefits Ins. Co.*, 274 F. Supp. 2d 767, 775 (E.D. Va. 2003) (quoting 29 U.S.C. § 1002(16)(B)). Just because an employer serves as a sponsor, however, does not make the employer a fiduciary, unless it retains discretionary plan authority. *Id.* For example, although a plan named an employer as sponsor, administrator, and fiduciary, the court considered function over form before deeming the employer a fiduciary. *Searls*, 50 F. Supp. 3d at 747–48. Specifically, the complaint alleged that the employer excluded time of service credits and decreased pension payments, in addition to tailoring a plan amendment for certain employees. *Id.* These actions supported a theory of "functional control and management." *Id.* at 748.

In contrast, although the Plan names NCG as a fiduciary, Baham's communications with Dawson-Murdock do not suggest any level of discretionary control over the Plan. Baham told

5

her, "At this point, UNUM insurance is denying our claim for life insurance benefits for Wayne. You will be receiving an official notice of this in the next few days." (Dk. No. 1, at 3.) These comments show that the insurer, not NCG, had discretionary control regarding benefits decisions. The complaint does not allege that NCG exercised "functional control and management" over the Plan in Baham's interactions with Dawson-Murdock. *Searls*, 50 F. Supp. 3d at 748.

The complaint fails to establish that NCG's conduct meets the ERISA fiduciary duty definition. Thus, the Court will grant the defendants' motion to dismiss Counts I and II.[4]

### *B. State Law Claims*

ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA "contains what may be the most expansive express pre-emption provision in any federal statute," barring all state law claims that "relate to" an ERISA plan. *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 947 (2016); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987) (noting the preemption clause's "expansive sweep"). Congress intended a "comprehensive civil enforcement scheme," providing exclusive remedies under ERISA. *Pilot Life*, 481 U.S. at 54. Unless common law causes of action fall under ERISA's narrow exceptions, they are "expressly pre-empted." *Id.* at 47–48.

A state law relates to an ERISA plan if it stands in some relation to, bears or concerns, pertains to, refers to, or has a connection with such a plan. *Gobeille*, 136 S. Ct. at 947. When a claim causes a court to direct its inquiry to an ERISA plan, the cause of action "relate[s] to"

---

[4] The Fourth Circuit views skeptically claims for equitable relief that other ERISA provisions adequately address. *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 102 (4th Cir. 2006). Because the complaint in this case fails to show that the defendants acted as fiduciaries, the Court need not decide if Dawson-Murdock's claims are merely "repackaged denial of benefits claims" under § 502(a)(1)(B). *See Jenkins v. Int'l Ass'n of Bridge*, No. 2:14-cv-526, 2015 WL 1291883, at *8 (E.D. Va. Mar. 20, 2015).

6

ERISA. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990). Parties characterizing their state-law claims as alternatives to an ERISA claim provide a clear "tip off that they seek the kind of alternate enforcement mechanism[] that ERISA preempts." *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 343 (4th Cir. 2007). Moreover, "[t]he central question is not whether a particular defendant is a fiduciary, or whether the preemption decision would create a gap in the law with respect to suits against nonfiduciaries." *Id.* Fiduciary status does not affect the ERISA preemption analysis because Congress intended ERISA to preempt claims that relate to employee benefit plans even when the defendant is a nonfiduciary. *Id.* (citing *Consol. Beef Indus., Inc. v. N.Y. Life Ins. Co.*, 949 F.2d 960, 964 (8th Cir. 1991); *Gibson v. Prudential Ins. of Am.*, 915 F.2d 414, 418 (9th Cir. 1990)).

Dawson-Murdock's state law claims "relate to" her husband's group life insurance plan. Her negligence count asserts that Baham's statements caused her to forego appealing Unum's claim denial, allegations that pertain to the Plan. *See Wilmington Shipping*, 496 F.3d at 343 (dismissing common law claims that relied on the same allegations that supported the ERISA claim). Additionally, Dawson-Murdock sets off her negligence claim with "alternatively," a clear indication that she seeks a state law alternative to escape ERISA's prescribed civil remedies. *See id.*; Dk. No. 1, at 6. Her breach of contract count, which seeks the exact same amount as the denied insurance claim, relies on Baham's October, 2016 e-mail informing her that Unum denied her benefits. These allegations indicate that the contract claim "relates to" the Plan. Thus, ERISA's broad scope preempts her state law causes of action.[5]

---

[5] Even without preemption, the complaint fails to state these two causes of action. A negligence claim requires a legal duty, breach, causation, and injury. *Kellermann v. McDonough*, 278 Va. 478, 487, 684 S.E.2d 786, 790 (2009). Dawson-Murdock does not plead injury because she does not, and cannot, indicate that appealing Unum's denial would have succeeded. To establish that a contract exists, a plaintiff must allege an offer, acceptance, and valuable consideration. *Dean*

7

## III. CONCLUSION

The complaint tells an unfortunate story, but its claims do not give rise to relief. Dawson-Murdock cannot establish that NCG acted as a Plan fiduciary, so her ERISA breach of fiduciary duty claims fail. Under ERISA's broad preemption clause, her two common law claims also fail. Accordingly, the Court grants the defendants' motion to dismiss.[6]

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: August 7, 2018
Richmond, VA

/s/ John A. Gibney, Jr.
United States District Judge

---

*v. Morris*, 287 Va. 531, 536, 756 S.E. 2d 430, 432–33 (2014). Dawson-Murdock does not plead valuable consideration for NCG's offer to pay her the insurance benefits.

[6] The plaintiff attempts to assert an intentional infliction of emotional distress ("IIED") claim in her opposition to the motion to dismiss. A plaintiff, however, may not amend her complaint by adding claims to her opposition brief. *Weakley v. Homeland Sec. Sols., Inc.*, 3:14-cv-785, 2015 WL 11112158, at *5 (E.D. Va. May 19, 2015). Because the plaintiff does not raise an IIED count in her complaint, the Court will not consider it.